707 So.2d 1165 (1998)
The STATE of Florida, Petitioner,
v.
Michael John HEIDRICK, Respondent.
The STATE of Florida, Petitioner,
v.
Serafin ORTIZ, Respondent.
Nos. 96-715, 96-639.
District Court of Appeal of Florida, Third District.
March 4, 1998.
*1166 Robert A. Butterworth, Attorney General, and Michael J. Neimand and Keith S. Kromash, Assistant Attorneys General; Katherine Fernandez-Rundle, State Attorney, and Anita J. Gay, Assistant State Attorney, for petitioner.
Bennett H. Brummer, Public Defender, and Bruce A. Rosenthal, Assistant Public Defender, for respondents.
Peter P. Sleasman, Gainesville, for Southern Legal Counsel, Inc. as amicus curiae.
Before SCHWARTZ, C.J., and NESBITT, JORGENSON, COPE, LEVY, GODERICH, FLETCHER, SHEVIN and SORONDO, JJ.

ON MOTION FOR REHEARING EN BANC
GODERICH, Judge.
We grant the State of Florida's motion for rehearing en banc and substitute the clerk's order filed on November 13, 1996, with the following opinion.
Through these petitions for writ of mandamus, the State of Florida seeks review of two circuit court orders finding that the circuit court did not retain jurisdiction to decide whether the respondents, Michael John Heidrick and Serafin Ortiz, continued to meet the criteria for involuntary hospitalization after their charges had been dismissed without prejudice pursuant to Rule 3.213(b), Florida Rules of Criminal Procedure. We deny the petitions.
Heidrick and Ortiz were defendants who were adjudicated incompetent to stand trial and were involuntarily hospitalized. § 916.13(1), Fla. Stat. (1995). Thereafter, several orders were entered continuing hospitalization based on a finding that the defendants remained incompetent to stand trial.
After five years of hospitalization, the circuit courts entered orders as to each defendant, pursuant to Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), and Rule 3.213(b), Florida Rules of Criminal Procedure, finding that there was no substantial probability that the defendants would regain mental competency in the foreseeable future. The orders also stated that the defendants met the criteria for involuntary placement pursuant to section 394.467(1), Florida Statutes. Therefore, the circuit courts dismissed the defendants' charges without prejudice to the State to refile the charges should the defendants be declared competent to stand trial in the future. Further, the circuit courts committed the defendants to the Department of Health and Rehabilitative Services [HRS]. § 916.13(2)(a), Fla. Stat. (1995); Fla. R.Crim. P. 3.213(b). The order as to defendant Ortiz also provided that he is to be "immediately transferred ... to a Civil Hospital." As required by Rule 3.213(b), the orders committing the defendants instructed the administrator of the facility to notify the state attorney of the committing circuit no less than 30 days prior to the defendants' anticipated dates of release.
A few years after each defendant had their charges dismissed without prejudice, HRS sent letters to the State Attorney of the Eleventh Judicial Circuit providing the requisite 30-day notice. The letters further explained that the treatment team opined that it was doubtful that the defendants would ever achieve competency to proceed to trial, but that the defendants were no longer dangers to themselves or others and that they could live and function in a less restrictive environment in the community.
*1167 Thereafter, the State moved to have the committing courts determine whether the defendants should remain involuntarily hospitalized. As to both defendants, the committing courts entered orders finding that they lacked jurisdiction to make such a determination. These petitions follow.
The State contends that pursuant to section 916.16, Florida Statutes (1995),[1] the committing courts have jurisdiction to determine whether the defendants continued to meet the criteria for involuntary hospitalization even though the defendants' charges had been dismissed without prejudice pursuant to Rule 3.213(b), Florida Rules of Criminal Procedure, and the State had decided not to refile the charges against the defendants. We disagree.
As stated earlier, the orders dismissing the charges without prejudice were entered pursuant to Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), and Rule 3.213(b), Florida Rules of Criminal Procedure. In Jackson, the trial court found that the defendant, a deaf mute with a mental level of a preschooler, was incompetent to stand trial. The trial court then ordered that the defendant be committed "until such time as [the Department of Mental Health] should certify to the court that `the defendant is sane.'" Jackson, 406 U.S. at 719, 92 S.Ct. at 1848. The evidence showed that there was little likelihood that the defendant would ever attain the competency necessary to stand trial. The defendant challenged the order arguing, in part, that the order deprived him of due process of law. The Supreme Court held that the "indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial does not square with the Fourteenth Amendment's guarantee of due process." Jackson, 406 U.S. at 731, 92 S.Ct. at 1854. Further, the Court held that
a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant.
Id. at 738, 92 S.Ct. at 1858 (footnote omitted).
In Florida, Rule 3.213(b), Florida Rules of Criminal Procedure, implements the requirements enunciated in Jackson. Rule 3.213(b) provides, in part, as follows:
(b) Commitment or Treatment During Continuing Incompetency. If at any time after 5 years after determining a person incompetent to stand trial ... when charged with a felony, or 1 year when charged with a misdemeanor, the court, after hearing, determines that the defendant remains incompetent to stand trial ..., that there is no substantial probability that the defendant will become mentally competent to stand trial ... in the foreseeable future, and that the defendant does meet the criteria for commitment, the court shall dismiss the charges against the defendant and commit the defendant to the Department of Health and Rehabilitative Services for involuntary hospitalization or residential services solely under the provisions of law.... In the order of commitment, the judge shall order that the administrator of the facility notify the state attorney of the committing circuit no less than 30 days prior to the anticipated date of release of the defendant. If charges are dismissed pursuant to this subdivision, the dismissal shall be without prejudice to the state to refile the charges should the defendant be declared competent to proceed in the future.
Further, the Committee Notes to Rule 3.213 provide: "As to criteria for involuntary hospitalization, see section 394.467(1), Florida Statutes; ..." Section 394.467(1), Florida Statutes (1995), is the civil involuntary placement criteria of the Baker Act.
*1168 Thus, in Florida, once a defendant's charges are dismissed without prejudice pursuant to Rule 3.213(b), the State is required to either release the defendant or commit the defendant for involuntarily hospitalization pursuant to section 394.467(1) of the Baker Act. Because the defendant is then involuntarily hospitalized pursuant to Chapter 394, not Chapter 916, the applicable discharge procedures are those contained in Chapter 394. Specifically, section 394.469(1), Florida Statutes (Supp.1996),[2] provides that the administrator of the facility is the one who has the power to discharge the patient. Chapter 394 does not allow the State to seek review of the administrator's decision to discharge the defendant before the court that initially committed the defendant. Therefore, contrary to the State's assertion, the discharge provision of section 916.16 is inapplicable, and pursuant to section 394.469(1), the decision to discharge the defendants rests solely with the administrator of the facility.
As stated above, under the circumstances of the instant case, the discharge provision of section 916.16 is inapplicable. However, even if applicable, this Court's holding would be the same. Prior to the Supreme Court's decision in Jackson, the Florida Supreme Court had the opportunity to address a similar issue in Trippodo v. Rogers, 54 So.2d 64 (Fla.1951), and Jones v. O'Connor, 185 So.2d 167 (Fla.1966). In Trippodo and Jones, the trial courts found that the defendants were insane and incapable of standing trial. The defendants were committed to a Florida state hospital and the commitment orders also provided that the defendants could not be released without the trial courts' consent. Moreover, at the time that the trial courts entered the commitment orders, section 917.01(2), Florida Statutes, which is the predecessor statute to section 916.16, was in effect. Section 917.01(2) provided, in part, as follows: "No defendant committed by a court to an institution, by reason of the examination referred to in this paragraph, shall be released therefrom, without the consent of the court committing him." Thereafter, the charges against the defendants were nolle prossed. The Florida Supreme Court, in both Trippodo and Jones, held that when the charges against the defendant had been nolle prossed, the consent requirement of section 917.01(2) was inapplicable and the hospital had the authority to discharge the defendant.
Further, the State also relies on Cuervo v. State, 603 So.2d 654 (Fla. 3d DCA 1992). In Cuervo, the defendant was involuntarily hospitalized due to his incompetence to stand trial. After five years of hospitalization, the circuit court dismissed the defendant's charges without prejudice and transferred the defendant to an HRS facility. Although mandated by Rule 3.213(b), the commitment order failed to provide that the administrator of the HRS facility was required to notify the state attorney of the committing circuit no less than 30 days prior to the anticipated release of the defendant. The trial court amended the order to comply with the notification requirement. On appeal, this Court affirmed finding that the trial court had jurisdiction to amend the order. In doing so, this Court held that
a later decision by the court to transfer the defendant to the Department of Health and Rehabilitative Services after five years of hospitalization, pursuant to the Baker Act, section 394.467, Florida Statutes (1991), does not divest the court of jurisdiction over the person and it may amend the commitment order to require that the administrator of the H.R.S. facility comply with Florida Rule of Criminal Procedure 3.213(b), which mandates that the State Attorney of the committing circuit be notified no less than thirty days prior to the anticipated date of release of the defendant. *1169 Cuervo, 603 So.2d at 654. Based on controlling case law, such as Jackson, Jones, and Trippodo, which the Cuervo decision failed to cite, we find that Cuervo was incorrectly decided. We, therefore, recede from any portion of Cuervo that is inconsistent with this opinion.
Finally, contrary to the State's assertion, we find that the sole purpose of the notification requirement of Rule 3.213(b), which provides that when the defendant's charges have been dismissed without prejudice, "the judge shall order that the administrator of the facility notify the state attorney of the committing circuit no less than 30 days prior to the anticipated date of release of the defendant," is to provide the state attorney of the committing circuit with the opportunity to decide whether he or she will refile the charges against the defendant. The 30-day notice is not for the purpose of providing the State with an opportunity to challenge the administrator's decision to discharge the defendant from the facility.
We find that based on the above analysis, the circuit courts properly found that they lacked jurisdiction to determine whether the defendants continued to meet the criteria for involuntary hospitalization. The petitions for writ of mandamus are denied but we note that this decision in no way prohibits the State or any other interested party from once again initiating an action to involuntarily hospitalize the defendants pursuant to the Baker Act, Chapter 394, Florida Statutes (1995).
Lastly, although we deny the petitions, we certify the following question as being one of great public importance:
WHETHER THE COMMITTING COURT RETAINS JURISDICTION TO DETERMINE WHETHER A DEFENDANT CONTINUES TO MEET THE CRITERIA FOR INVOLUNTARY HOSPITALIZATION EVEN THOUGH THE DEFENDANT'S CHARGES HAVE BEEN DISMISSED WITHOUT PREJUDICE PURSUANT TO RULE 3.213(b), FLORIDA RULES OF CRIMINAL PROCEDURE, AND THE STATE HAS DETERMINED THAT IT WILL NOT REFILE THE CHARGES?
Petitions denied.
SCHWARTZ, C.J., and JORGENSON, COPE, LEVY, FLETCHER, SHEVIN and SORONDO, JJ., concur.
NESBITT, J., dissents.
NESBITT, Judge, dissenting:
I respectfully dissent. In my view, the state had the right to seek review of the hospital administrator's administrative discharge of the defendants; and at the very minimum the circuit court possessed the inherent power to determine whether the defendants continued to meet the criteria for involuntary hospitalization. I would grant the writ.
GERSTEN and GREEN, JJ., recused.
NOTES
[1] 916.16 Jurisdiction of committing court.The committing court shall retain jurisdiction in the case of any patient hospitalized ... pursuant to this chapter. No such person may be released except by order of the committing court. The administrative hearing examiner shall have no jurisdiction to determine issues of continuing hospitalization or release of any person admitted pursuant to this chapter.
[2] Section 394.469(1) provides:

(1) POWER TO DISCHARGE.At any time a patient is found to no longer meet the criteria for involuntary placement, the administrator shall:
(a) Discharge the patient, unless the patient is under a criminal charge, in which case the patient shall be transferred to the custody of the appropriate law enforcement officer;
(b) Transfer the patient to voluntary status on his or her own authority or at the patient's request, unless the patient is under criminal charge or adjudicated incapacitated; or
(c) Place an improved patient, except a patient under a criminal charge, on convalescent status in the care of a community facility.